**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CORNELIO GARCIA-MATA,** | § | |
| **TDCJ No. 01823084,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-15-CA-791-RP** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Cornelio Garcia-Mata filed this federal habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2012 Comal County conviction in cause no. CR2012-205 for driving while intoxicated and enhanced life sentence. For the reasons discussed below, Petitioner is entitled to neither federal habeas corpus relief nor a Certificate of Appealability from this Court.

## I. Background

On May 9, 2012, a Comal County grand jury indicted Petitioner in cause no. CR2012-205 on a single count of operating a motor vehicle in a public place while intoxicated.[1] The indictment further alleged Petitioner had previously been convicted of operating a motor vehicle

[1] ECF no. 7-13, at pp. 7-8.

while intoxicated two or more times and gave notice the State would seek an affirmative finding on the issue of the use of a deadly weapon.[2]

The guilt-innocence phase of Petitioner's trial commenced November 14, 2012. The jury heard testimony from multiple eyewitnesses describing the erratic manner in which Petitioner operated a motor vehicle on Interstate Highway 35.[3] Petitioner stipulated to the fact he had three

---

[2] *Id.*, at p. 7. Enhancement paragraphs in the Petitioner's indictment alleged he had been convicted on four occasions in the courts of Guadalupe County of driving while intoxicated; more specifically, that he had been convicted (1) in Guadalupe County cause no. 99-1543-CR for an offense committed on or about October 1, 1999, (2) in Guadalupe County cause no. 01-1055-CR for an offense committed on or about February 12, 2001, (3) in Guadalupe County cause no. 05-0250-CR for an offense committed on or about January 9, 2005, and (4) in Guadalupe County cause no. 08-2122-CR for an offense committed on or about June 16, 2008. *Id.*, at p. 8.

[3] More specifically, a driver who followed Petitioner's vehicle for at least five miles while traveling north on IH-35 testified without contradiction that (1) she observed Petitioner's vehicle drifting in a jerky manner across lanes in both directions and traveling at inconsistent speeds, (2) other vehicles had to swerve to avoid being side-swiped by Petitioner's pickup truck, and (3) Petitioner's vehicle drifted to the left shoulder and slowed almost to a stop before exiting the highway. Statement of facts from Petitioner's Trial (henceforth "S.F. Trial"), Volume 3 of 5, testimony of Florence Elizabeth Schurle (ECF no. 7-5), at pp. 20-29. A passenger in the Schurle vehicle testified that (1) they felt it was unsafe to pass Petitioner's vehicle because it was driving erratically at a speed much below the speed limit, (2) at first she thought the driver of Petitioner's vehicle was texting but then considered alcohol the most likely cause of his erratic driving, (3) traffic was moderate and other vehicle which did pass Petitioner's pickup truck had to swerve to avoid Petitioner's truck which was wandering back and forth across the highway, (4) she called 911 to report Petitioner's erratic driving, (5) Petitioner's vehicle slowed to below ten mph but continued to wander all over the road, and (6) they exited the highway when directed to do so by the 911 operator. S.F. Trial, Volume 3 of 5, testimony of Georgiea Slyter, (ECF no. 7-5), at pp. 20-39. A New Braunfels Police patrol officer testified without contradiction that (1) he observed Petitioner's pickup truck exit the highway, move to the right lane of the access road, then back to the left lane of the access road and begin to re-enter the highway when it swerved suddenly to the right, across a cement median and back to the access road, (2) he activated his lights and made a traffic stop, (3) Petitioner was the only occupant of the pickup truck, (4) Petitioner had difficulty getting his seat belt undone, (4) the zipper on Petitioner's pants was down and Petitioner's pants were wet, (5) he observed a can of beer inside a plastic bag on the seat next to Petitioner, (6) Petitioner's eyes were bloodshot and glassy, (7) Petitioner was unsteady on his feet and, when asked to furnish a driver's license, Petitioner presented a pair of business cards, (8) Petitioner denied having consumed any alcohol that day, (9) he attempted to conduct a horizontal gaze nystagmus test on Petitioner but Petitioner was

prior convictions out of Guadalupe County for driving while intoxicated.[4] A forensic toxicologist testified without contradiction that (1) the vial of Petitioner's blood presented for analysis had a blood level of 0.446 grams of alcohol per 100 milliliters of whole blood, a level more than five times the legal limit, (2) given his body mass, Petitioner would have needed to consume more than twenty-three twelve-ounce beers to obtain a blood alcohol level that high, (3) Petitioner's blood alcohol level would have affected his ability to navigate and operate a motor vehicle, and (4) the blood alcohol test he used to test Petitioner's blood is very reliable.[5] Petitioner testified in his own defense, swearing that (1) his difficulty driving the pickup in question was due to his unfamiliarity with the vehicle's stick shift, (2) he did not understand the directions given to him by the officer who stopped his vehicle because of the language barrier between them, (3) he only drove the pickup a short distance after the vehicle's owner abandoned him and the vehicle at a convenience store, (4) he had four prior DWI convictions, (5) he was on parole on the date he was stopped, (6) he may have been intoxicated the day before he was

---

unable to follow his directions, (10) Petitioner's breath had a very strong odor of alcoholic beverage, (11) Petitioner's speech was slurred and Petitioner appeared to be out of balance, (12) he was forced to guide Petitioner to the back of the pickup truck from his breath, (13) a female officer who arrived shortly afterward, found two open beer cans inside Petitioner's vehicle, (14) while standing outside the pickup truck, Petitioner appeared to wet himself again, and (15) a background check revealed Petitioner had prior DWI convictions so he took Petitioner to the hospital for a blood draw and then on to jail. S.F. Trial, Volume 3 of 5, testimony of Russell Whitehair, at pp. 40-76.

[4] S.F. Trial, Volume 3 of 5, at pp. 85-86.

[5] S.F. Trial, Volume 3 of 5, testimony of James Michael Burris (ECF no. 7-5), at pp. 88-110.

stopped but had not had anything to drink that day, (7) he was driving slowly in the left lane of IH-35, and (8) after he was arrested, he struck his head as he was pushed into a police vehicle.[6]

On November 15, 2012, the jury returned its verdict, finding Petitioner guilty of driving while intoxicated with two or more previous convictions and found in favor of the prosecution on the deadly weapon finding.[7]

The punishment phase of Petitioner's trial commenced November 15, 2012. Petitioner's parole officer testified (1) he had no difficulty communicating with Petitioner in English, (2) one condition of Petitioner's parole was that Petitioner would not consume any alcoholic beverages, (3) another condition of Petitioner's parole was that he would not operate any motor vehicle that was not equipped with an interlock device which measures alcohol levels in the breath, (4) on at least one prior occasion, Petitioner had been observed operating a motor vehicle while intoxicated which crossed the center line of a roadway, (5) on another occasion, Petitioner had been observed driving "all over the road" and hitting curbs, (6) on both occasions, Petitioner was later convicted of DWI, (7) on both occasions, Petitioner denied drinking, and (8) Petitioner denied being an alcoholic.[8] A Comal County probation officer testified generally about the wide range of alcohol treatment programs available to assist persons convicted of DWI to change their behavior and thinking patterns.[9]

---

[6] S.F. Trial, Volume 3 of 5, testimony of Cornelio Garcia-Mata (ECF no. 7-5), at pp. 118-58.

[7] S.F. Trial, Volume 4 of 5 (ECF no. 7-6), at p. 6.

[8] S.F. Trial, Volume 4 of 5, testimony of William Daniel (ECF no. 7-6), at pp. 18-30.

[9] S.F. Trial, Volume 4 of 5, testimony of Sandra Maggiani (ECF no. 7-6), at pp. 30-38.

On November 15, 2012, the jury returned its verdict at the punishment phase of Petitioner's trial, imposing a sentence of life imprisonment.[10]

Petitioner appealed his conviction and sentence.[11] In an unpublished opinion issued August 6, 2014, the Texas Third Court of Appeals affirmed Petitioner's conviction and sentence. *Garcia-Mata v. State*, 03-12-00804-CR, 2014 WL 3893068 (Tex. App. – Austin, Aug. 6, 2014, *pet. ref'd*). The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on October 1, 2014 (PD-1149-14).[12]

On April 14, 2015, Petitioner filed a pro se application for state habeas corpus relief in which he argued (1) the imposition of a life sentence for a third DWI conviction which did not involve injury to a person violated the Eighth Amendment's prohibition on cruel and unusual punishment, (2) his trial counsel rendered ineffective assistance by failing to challenge the deadly weapon finding, (3) admission of the results of his blood draw testing violated the Fifth Amendment's ban on compulsory self-incrimination, (4) the involuntary withdrawal of his blood following his arrest was an illegal search and seizure, and (5) his trial counsel rendered ineffective assistance by failing to challenge the admission of Petitioner's blood alcohol test

[10] S.F. Trial, Volume 4 of 5, at pp. 55-56.

[11] Petitioner's Appellant's Brief appears at ECF no. 7-18. Petitioner raised a single point of error on direct appeal, i.e., an argument that the trial court erred in sustaining the state's objection to admission of a video depicting the events surrounding Petitioner's arrest; specifically, Petitioner argued the video showed Petitioner striking his head while being placed in a patrol car and furnished evidence the Petitioner did not understand the directions given by his arresting officer during an aborted field sobriety test.

[12] Petitioner's petition for discretionary review (ECF no. 8-6) urged the same point of error raised in Petitioner's Appellant's Brief.

results.[13] The Texas Court of Criminal Appeals denied Petitioner's state habeas corpus application without written order on July 8, 2015. *Ex parte Cornelio Garcia-Mata*, WR-82,578-02 (Tex. Crim. App. July 8, 2015).

**II. <u>Proceedings in this Court</u>**

On September 8, 2015 (ECF nos. 1 & 2), Petitioner filed his federal habeas corpus petition and memorandum in support in this Court, arguing (1) his deadly weapon finding and enhanced life sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment, (2) admission of the blood alcohol test results following his involuntary blood draw violated his Fifth Amendment right to freedom from compelled self-incrimination, and (3) the involuntary withdrawal of his blood following his arrest violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

On November 30, 2015 (ECF no. 9), Respondent filed an answer in which he argued (1) Petitioner's complaint about his deadly weapon finding raises only state law matters not cognizable in federal habeas corpus proceeding because Petitioner has no liberty interest in release on parole, (2) the use of blood draw evidence does not violate a defendant's privilege against compulsory self-incrimination, as recognized by the Supreme Court in *Schmerber v. State of California*, 384 U.S. 757, 765 (1966) ("Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."), and (3) Petitioner was precluded from asserting his Fourth Amendment complaint about his blood draw in this federal habeas corpus proceeding by the virtue of the Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided

[13] ECF no. 8-13, at pp. 5-23.

an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

On December 14, 2015 (ECF no. 10), Petitioner filed his reply to Respondent's answer, arguing (1) the increase in Petitioner's flat-time requirement for release on parole following a deadly weapon finding violates the prohibition on cruel and unusual punishment because it violates evolving standards of decency because Petitioner's offense did not involve serious bodily injury, (2) the compulsory blood draw violated Fifth Amendment principles because his blood was testimonial in nature, and (3) his blood was seized illegally in violation of the Fourth Amendment's prohibition on unreasonable searches and seizures and he was denied a full and fair adjudication of his Fourth Amendment claim.

## III. AEDPA Standard of Review

Because Petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of Petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA standard of review, this Court cannot grant Petitioner federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of 28 U.S.C. Section 2254(d) (1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of...clearly established Federal law,' § 2254(d) (1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins v. Smith*, 539 U.S. at 520-21. The focus of this

inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

As the Supreme Court has explained:

> Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Bobby v. Dixon*, ___ U.S. ___, ___, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Under the AEDPA, what constitutes "clearly established federal law" is determined through review of the decisions of the United States Supreme Court, not the precedent of the federal Circuit Courts. *See Lopez v. Smith*, ___ U.S. ___, ___, 135 S. Ct. 1, 2, 190 L. Ed. 2d 1 (2014)

(holding the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude a particular constitutional principle is "clearly established").

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. 28 U.S.C. §2254(d) (2) provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood v. Allen*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, Section 2254(e) (1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless

Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e) (1). It remains unclear at this juncture whether Section 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under Section 2254(d) (2). *See Wood v. Allen*, 558 U.S. at 300 (choosing not to resolve the issue of Section 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice v. Collins*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of Section 2254(e)(1)).

However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Dretke*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (federal habeas review of a state court's adjudication involves review only of a state court's decision, not the written opinion explaining the decision), *cert. denied*, 132 S. Ct. 124 (2011); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)

(holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

## IV. Cruel and Unusual Punishment Claim

Petitioner argues the imposition of a life sentence for an offense which did not involve serious bodily injury and in which the deadly weapon finding was premised upon his operation of a motor vehicle on public highways violates the Eighth Amendment's prohibition against cruel and unusual punishment. In *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991), the United States Supreme Court permitted to stand under the Eighth Amendment a mandatory life sentence without the possibility of parole for one drug conviction. "Severe, mandatory penalties may be cruel. But they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Id.*.

Here, Petitioner was sentenced by a jury which was free to impose a wide range of potential sentences, ranging from twenty-five years to life imprisonment, all with the possibility of release on parole at some point.[14] A sentence of imprisonment for any term of years does not fun afoul of the Eighth Amendment's cruel and unusual punishment clause because proportionality review applies only to a sentence of death. *Harmelin v. Michigan*, 501 U.S. at 994-96; *United States v. Rose*, 587 F.3d 695, 704-05 (5th Cir. 2009) (upholding against Eighth Amendment challenge the career offender enhancements of federal criminal sentences), *cert, denied*, 559 U.S. 1019 (2010); *United States v. Martin*, 431 F.3d 846, 853 (5th Cir. 2005) (holding mandatory life sentence did not violate cruel and unusual punishment clause), *cert. denied*, 547 U.S. 1059 (2006). Outside the context of capital punishment, successful challenges

---

[14] S.F. Trial, Volume 4 of 5, at pp. 42-43.

to the proportionality of particular sentences are exceedingly rare. *Rummel v. Estelle*, 445 U,.S. 263, 272 (1980); *United States v. Harris*, 566 F.3d 422, 436 (5th Cir. 2009) (rejecting Eighth Amendment challenge to life sentence resulting from multiple prior, but minor, drug convictions), *cert. denied*, 559 U.S. 975 (2010); *United States v. Parker*, 505 F.3d 323, 330-31 (5th Cir. 2007) (upholding against Eighth Amendment challenge a life sentence resulting from a statutory enhancement and based upon two prior, very old, minor, drug convictions), *cert. denied*, 552 U.S. 1221 (2008). While a life sentence for a crime involving no actual violence might be considered a disproportionate punishment it is not "grossly disproportionate" as that term is understood under current law. *See United States v. Looney*, 532 F.3d 392, 396-97 (5th Cir.) (upholding life sentence against Eighth Amendment challenge where offense was non-violent and defendant had no prior criminal convictions), *cert. denied*, 555 U.S. 1005 (2008); *United States v. Helm*, 502 F.3d 366, 368-69 (5th Cir. 2007) (upholding 180-month sentence under Armed Career Criminal Act for defendant convicted of being a felon in possession of a firearm); *United States v. Mays*, 466 F.3d 335, 339-40 (5th Cir. 2006) (rejecting Eighth Amendment challenge to life sentence resulting, in part, from consideration of defendant's juvenile conviction for drug possession), *cert, denied*, 549 U.S. 1234 (2007).

The Texas Court of Criminal Appeals' rejection on the merits of Petitioner's Eighth Amendment challenge to his life sentence, during the course of Petitioner's state habeas corpus proceeding, was neither (1) contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor (2) based on an unreasonable determination of the facts in light of the evidence presented in the

Petitioner's state trial, appellate, and state habeas corpus proceedings. Petitioner's first ground for relief in his federal habeas corpus petition does not warrant federal habeas corpus relief.[15]

## V. Fifth Amendment Claim

Petitioner's Fifth Amendment claim is foreclosed, as respondent correctly points out, by the holding in *Schmerber v. State of California*, 384 U.S. 757 (1966), in which the Supreme Court held "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature," and "the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to those ends." *Id.*, at 761. The Supreme Court's opinion in *Schmerber* also quoted Justice Holmes writing in *Holt v. United States*, 218 U.S. 245, 252-53 (1910) ("the prohibition of compelling a man in a criminal case to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."). *Schmerber*, 384 U.S. at 763. "Since the blood test evidence, although an incriminating product compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds." *Id.*, at 765; *United States v. Craft*, 691 F.2d 205. 206-07 (5th Cir. 1982) ("The Fifth Amendment privilege 'is a bar against compelling communications or testimony, but

[15] Respondent also correctly argues that, insofar as Petitioner argues the state courts erroneously construed applicable state law when rejecting Petitioner's challenge to his life sentence, Petitioner's argument ignores the well-settled legal principles that (1) a state court's interpretation of state law binds a federal court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009), *cert. denied*, 562 U.S. 1203 (2011); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, 552 U.S. 1314 (2008); and (2) errors of state law do not furnish a basis for federal habeas corpus relief, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Goodrum v. Quarterman*, 547 F.3d 249, 261 (5th Cir. 2008), *cert. denied*, 556 U.S. 1130 (2009).

that compulsion which makes a suspect or accused the source of real or physical evidence does not violate it.' "), *cert. denied*, 460 U.S. 1087 (1983).

The Texas Court of Criminal Appeals' rejection on the merits of Petitioner's Fifth Amendment claim, during the course of Petitioner's state habeas corpus proceeding, was neither (1) contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor (2) based on an unreasonable determination of the facts in light of the evidence presented in the Petitioner's state trial, appellate, and state habeas corpus proceedings. Petitioner's second ground for relief in his federal habeas corpus petition does not warrant federal habeas corpus relief.

### VI. Fourth Amendment Claim Foreclosed by *Stone v. Powell*

Supreme Court precedent forecloses federal habeas corpus relief for state prisoners convicted on the basis of evidence obtained in an illegal search and seizure. *Cobb v. Thaler*, 682 F.3d 364, 375 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (2013); *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Shisinday v. Quarterman*, 511 F.3d 514, 524 (5th Cir. 2007), *cert. denied*, 555 U.S. 815 (2008). In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Because Texas has procedures that allow criminal defendants to pursue Fourth Amendment claims at the trial level and on direct appeal, under the holding in *Stone v, Powell*, a Texas criminal defendant necessarily receives a "full and fair opportunity" to litigate his illegal-search-

and-seizure claim and is barred from raising it on federal habeas review. *Register v. Thaler*, 681 F.3d at 628.

"It is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those procedures, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Register v. Thaler*, 681 F.3d at 628. "In short, the *Stone* bar applies even where the petitioner did not avail himself of the litigating opportunity provided by the state courts." *Id.*, *Shisinday v. Quaterman*, 511 F.3d at 525 ("The Fifth Circuit applies the bar as long as the state gives the defendant an opportunity to litigate the issue, whether or not the defendant takes advantage of the opportunity."); *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002) (holding the same), *cert. denied*, 537 U.S. 1196 (2003).

In the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, *Stone* forecloses federal habeas review. *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006), *cert. denied*, 549 U.S. 1120 (2007); *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Petitioner's conclusory assertions that he was denied a full and fair opportunity to litigate his Fourth Amendment claims are insufficient to prevent foreclosure of federal habeas review on his illegal blood draw claim under the rule announced in *Stone.* Petitioner's third claim does not warrant federal habeas corpus relief.[16]

[16] Even if this Court were to address the merits of Petitioner's Fourth Amendment claim, the facts and circumstances of Petiioner's case appear virtually indistinguishable from those which the Supreme Court concluded justified as reasonable the blood draw in *Schmerber*, 384 U.S. at 766-72 (there was plainly probable cause for the officer to arrest Petitioner and charge

**VII. Certificate of Appealability**

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997) (recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997) (holding the standard for obtaining a CoA is the same as for a CPC). The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n.2 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. §2253(c)(2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000) (holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of

---

him with driving while under the influence; the officer might reasonably have believed it was necessary to obtain Petitioner's blood before securing a warrant given the fact blood alcohol levels tend to diminish shortly after drinking stops as the body flushes the alcohol; the means chosen to measure the Petitioner's blood alcohol level was a reasonable one; and the blood was obtained in a hospital setting by a registered nurse in accordance with accepted medical practices).

appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3). A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).

To make such a showing, the Petitioner need not show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282; *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. at 484; *Barefoot v. Estelle*, 463 U.S. at 893 n.4. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas Petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court disposed of the claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Johnson*, 537

U.S. at 338 (*quoting Slack v. McDaniel*, 529 U.S. at 484); *Tennard v. Dretke***,** 542 U.S. at 282. In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

Reasonable minds could not disagree over this Court's conclusions that (1) the Texas Court of Criminal Appeals reasonably rejected Petitioner's cruel and unusual punishment claim on the merits during Petitioner's state habeas corpus proceeding, (2) Petitioner's Fifth Amendment claim is foreclosed by the Supreme Court's holding in *Schmerber*, and (3) the holding in *Stone v. Powell* forecloses Petitioner's Fourth Amendment claim. Petitioner is not entitled to a Certificate of Appealability on any of his claims herein.

Accordingly, it is hereby **ORDERED** that:

1. Petitioner's original federal habeas corpus petition, filed September 8, 2015 (ECF nos. 1 & 2), is in all respects **DENIED.**

2. Petitioner is **DENIED** a Certificate of Appealability on all his claims in this § 2254 action.

**SIGNED** on May 10, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE